# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| RALPH E. RUSSELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:08-CV-2272-M-BK |
| | § | |
| JOHN E. POTTER, Postmaster General, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSION, AND RECOMMENDATION

Pursuant to Special Order 3, this case has been referred to the undersigned for pretrial management. The cause is now before the Court on *Defendant's Motion to Dismiss, or in the Alternative Motion for Summary Judgment*. (Doc. 38; Doc. 39). Based on the relevant pleadings, evidence, and applicable law, the Court finds Defendant's motion to be well taken and recommends that it be **GRANTED.**

## I. PROCEDURAL POSTURE

On December 24, 2008, Plaintiff filed a *pro se* complaint against his employer, John E. Potter, the Postmaster General of the U.S. Postal Service, alleging a laundry list of violations of federal and state laws, but wholly void of any pertinent factual enhancement. Plaintiff avers Defendant is liable under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the Civil Service Reform Act, and the Fair Labor Standards Act. (Doc. 1 at 1-2). Plaintiff, however, bases his claims for recovery on conclusory allegations that Defendant committed illegal actions, including: refusing to grant advancement opportunities, non-accommodation of disabilities, disparate treatment, unlawful termination, "official oppression," holding Plaintiff to higher standards, illegal discrimination, harassment, threats, not

paying Plaintiff for services provided, falsifying federal documents, creating a hostile work environment, abusing power, destruction of federal documents, retaliating for whistle blowing, disability discrimination, and libel and slander. (Doc. 1 at 2-3, 6).

Defendant moves to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and, in the alternative, for summary judgment.[1] (Doc. 38). Defendant argues, *inter alia*, that Plaintiff's allegations regarding his termination from employment in 2008, his disability discrimination claims, his reprisal/retaliation claims, and his claims stemming from his second Equal Employment Opportunity Commission (EEOC) complaint fail under FED. R. CIV. P. 12(b)(1) for failure to exhaust administrative remedies. (Doc. 38 at 2, Doc. 39 at 26-33). Further, Defendant avers that Plaintiff's non-Title VII claims fail under FED. R. CIV. P. 12(b)(6) for failure to state a claim. (Doc. 38 at 2, Doc. 39 at 33, 41-42). Lastly, Defendant contends that Plaintiff's claims arising from Plaintiff's first Equal Employment Opportunity (EEO) complaint, which concern allegations of a hostile work environment, fail under FED. R. CIV. P. 56. (Doc. 38 at 2, Doc. 39 at 16-26). Plaintiff filed his response in opposition on February 10, 2011 (Doc 47), which will be referred to with specificity throughout.

## II. RELEVANT FACTS

In its uncontested statement of facts and supporting evidentiary materials, Defendant indicates that Plaintiff Ralph Russell joined the Postal Service in March 1982, and worked as a letter carrier at the Mesquite Post Office. (Doc. 39 at 2). In May 2005, Plaintiff began training as a 204B temporary acting supervisor, which is a "craft" employee who is temporarily promoted

---

[1] Because the Court concludes that dismissal and summary judgment are warranted on the bases stated herein, and for the sake of judicial economy, Defendant's alternate arguments, although meritorious, are not addressed.

to serve as an acting supervisor and can be returned to his or her permanent position at any time pursuant to management's discretion. (Doc. 39 at 2). In contrast, a promoted supervisor is an employee who has been assigned to a permanent position as supervisor following the required application, selection, and training in the Associate Supervisor Program (ASP). (Doc. 39 at 2-3).

In August 2005, Yulanda Francis-Love, an African American, became Postmaster of the Mesquite Post Office. (Doc. 39 at 3). At the time, Plaintiff, who is Caucasian and over 40 years of age, and co-worker Robert Coleman, an African American under age 40, were working as a 204B supervisors. (Doc. 39 at 3; Doc. 47 at 8). Beginning on September 21, 2005, Love ceased using letter carriers as 204B supervisors because the office was adequately staffed with promoted supervisors; and Plaintiff was reassigned to his permanent position as a city letter carrier. (Doc. 39 at 3).

Plaintiff continued to perform his work as a letter carrier until he took sick leave to have hip surgery, and was off work until November 21, 2005. (Doc. 39 at 4). While Plaintiff was on sick leave, a 204B opportunity arose in the Plano Post Office, to which Love assigned Coleman, beginning October 22, 2005. (Doc. 39 at 4).

After Plaintiff returned from sick leave, he carried his mail route in Mesquite until January 18, 2006. (Doc. 39 at 5). In January 2006, Plaintiff and Coleman were assigned to work as 204B supervisors at the Waxahachie Post Office. (Doc. 39 at 5-6). Coleman worked in Waxahachie for only a short time before returning to Mesquite. (Doc. 39 at 6). Plaintiff remained a 204B supervisor in Waxahachie until March 3, 2006, when Love directed all of her 204B supervisors to return to Mesquite because a high percentage of employees were on annual leave. (Doc. 39 at 6). In April 2006, the Plano Postmaster requested managerial assistance and

3

specifically requested that Love assign Coleman to serve as a 204B supervisor in Plano, due to Coleman's previous supervisory experience there. (Doc. 39 at 5).

From March 4, 2006 to June 10, 2006, Plaintiff carried his mail route in Mesquite. (Doc. 39 at 7). Plaintiff claims that it was at that point postal management began to harass him. (Doc. 39 at 7; Def. Exhibit 22, App. 127-28).

On June 10, 2006, "Plaintiff left work claiming he had a nervous breakdown as a result of the level of hostility from management and employee alike that was intolerable to [him]." (Doc. 39 at 7; Doc. 40-3 at 40). Thereafter, Plaintiff never returned to his position at the Mesquite Post Office. (Doc. 39 at 7).

### A.   Equal Employment Opportunity Case 0286

On June 15, 2006, Plaintiff sought EEO counseling and his claim was assigned case no. 4G-752-0286-06 (Case 0286). (Doc 40-1 at 2). That date, Plaintiff submitted an Information for Pre-Complaint Counseling Form asserting that he was being discriminated against on the basis of race, color, and age. (Doc 40-1 at 6-13). On July 5, 2006, Plaintiff filed a formal EEO complaint of discrimination based on race, color, and age. (Doc 40-1 at 14). On August 3, 2006, the Postal Service issued an acceptance letter on Plaintiff's EEO claim in Case 0286, stating Plaintiff's claim as follows: "Between September 2005 and June 2006, you were harassed and held to a higher standard than other employees." (Doc 40-1 at 15). Subsequently, Plaintiff explained his EEO complaint as follows:

> The main reason for my filing an EEOC is that I have been basically <u>Demoted</u>: 204/B in good standing to Letter Carrier. I have lost valuable experience. I have also lost a substantial amount of <u>earnings</u>. Also "Oppression," as I have been systematically stripped of access to advancement opportunities & all other type of access to the working Postal Network. Finally, I have been discredited by all of these & other actions.

(Doc 40-1 at 19) (emphasis in original).

Upon completion of the investigation in Case 0286, Plaintiff requested a hearing before an EEOC administrative law judge. (Doc. 39 at 8). The administrative judge modified the accepted issue to "Whether [Plaintiff] was subjected to a hostile work environment on the [basis] of race, color, and/or age between September 2005 and June 2006," and noted that the alleged harassment included, but was not limited to:

> being held to a higher standard; being constantly threatened to do more; repeatedly being denied annual leave; never being offered a detail in a position of supervisor/204B; not being offered advancement opportunities; being specifically denied the opportunity to go on details as supervisor trainee; being treated in a manner which discredited him before his peers and his management, and on June 14, 2006, being notified that disciplinary action would be issued against him for his absences on June 12 and 13, 2006.

(Doc 40-2 at 15). On May 8, 2008, the administrative law judge issued her decision in Case 0286 finding that "the preponderance of the evidence did not establish a *prima facie* case of harassment discrimination because the complained about actions were not taken on the basis of race, color, and/or age." (Doc. 40-3 at 8). The Postal Service then issued a Notice of Final Action implementing the decision on May 16, 2008. (Doc. 40-3 at 12-13). Plaintiff appealed the decision and on September 25, 2008, the EEOC's Office of Federal Operations issued its decision affirming the agency's decision in Case 0286. (Doc. 40-3 at 19-23).

**B.     Equal Employment Opportunity Case 0413**

On September 13, 2006, while Case 0286 was still being investigated, Plaintiff sought EEO counseling for a second time and later filed an Information for Pre-Complaint Counseling Form in which he alleged retaliation and discrimination based on race, color, age and mental disability. (Doc. 40-2 at 6-8). This claim was assigned case no. 4G-752-0413-06 (Case 0413).

5

*Id*. On November 13, 2006, Plaintiff filed a formal EEO complaint in Case 0413 alleging race, color and sex discrimination, but did not include any allegation of retaliation or disability. (Doc. 40-2 at 9). On December 12, 2006, the Postal Service's EEO analyst issued a letter on Plaintiff's claim in Case 0413 defining the issue as follows: "You allege discrimination based on Race (Caucasian), Color (White), and Sex (Male), when since August 3, 2006, you have not been paid, advancement opportunities were removed, and attempts were made to discredit you." (Doc 40-2 at 10-11). The letter further explained that Plaintiff's claim that a hostile work environment was created by his meeting with an agent of the Office of Inspector General would not be investigated. *Id*.

Upon completion of the investigation in Case 0413, Plaintiff requested a hearing before an EEOC administrative law judge. (Doc. 39 at 9). On November 30, 2007, Plaintiff filed a notice withdrawing his request for a hearing and requesting that the Postal Service issue a Final Agency Decision. (Doc. 40-2 at 18-21). On January 16, 2008, the Postal Service issued a Final Agency Decision in Case 0413 finding Plaintiff had "failed to establish a *prima facie* case of discrimination based upon race, color, or sex" and "that he was subjected to discrimination as alleged." (Doc. 40-2 at 27). Plaintiff appealed the decision to EEOC's Office of Federal Operation. On August 6, 2008, the EEOC's Office of Federal Operation issued its decision affirming the agency's decision in Case 0413. (Doc. 40-3 at 13-14). On December 24, 2008, Plaintiff filed the instant suit.

In the meantime, on March 3, 2008, the Postal Service issued Plaintiff a Notice of Proposed Separation for failure to meet the requirements of his position; said correspondence also offered him the opportunity to retire. (Doc. 40-2 at 35-36). Subsequently, on May 13, 2008,

Plaintiff was advised by letter that he would be removed from the Postal Service, effective May 16, 2008. (Doc. 40-2 at 37-38). The letter noted that Plaintiff had failed to respond to the Notice of Proposed Separation. *Id*.

### III. APPLICABLE LAW AND ANALYSIS

**A.     Plaintiff's Title VII Claims**

   ***1. The Court lacks jurisdiction over Plaintiff's claims of disability discrimination.***

The Court lacks jurisdiction over any claim by Plaintiff of employment discrimination due to disability because he wholly failed to exhaust his administrative remedies as to that issue. Before bringing suit under Title VII, the ADA, or the Rehabilitation Act, a federal employee claiming discrimination must first exhaust his administrative remedies. *Dao v. Auchman Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996). Specifically, no federal action alleging employment discrimination may be brought unless the alleged discrimination has been made the subject of a timely EEOC charge. *See generally* 42 U.S.C. § 2000e-5. A plaintiff's failure to exhaust his administrative remedies "wholly deprives the district court of jurisdiction" to hear his Title VII claims. *Tolbert v. United States*, 916 F.2d 245, 247 (5th Cir. 1990).

The scope of an EEOC complaint is not strictly construed. *McClain v. Lufkin Indust., Inc*, 519 F.3d 264, 273 (5th Cir. 2008). However, "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id*.

Here, the evidence conclusively establishes that Plaintiff did not allege discrimination on the basis of disability in either of his EEO complaints. (Doc. 40-1 at 14; Doc 40-2 at 9). Not only was there no mention of disability discrimination in the narrative sections of his complaints,

7

Plaintiff also failed to check the disability option on the face of the complaint forms. *Id*. Yet, he argues that the issue of disability discrimination was raised by <u>Defendant</u> during the EEOC administrative hearing. (Doc. 47 at 3). He specifically cites Postmaster Love's administrative hearing testimony in which she stated Plaintiff was not able to perform a specific supervisory duty due to his "walking restrictions." *Id*. This mere mention by a witness at the administrative hearing of Plaintiff's physical restrictions, however, did not constitute a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices," so as to relieve Plaintiff of his legal obligation to specifically complain to the EEOC regarding discrimination based on disability. *See* 29 C.F.R. § 1601.12(a)(3) (outlining the required content of an EEOC charge).

It should also be noted that while Plaintiff's complaint of disability discrimination in this case is conclusory, he testified during his deposition that his claim is premised on the Postal Service's refusal to honor the work restrictions placed by Plaintiff's doctor after his hip surgery, and the denial of his worker's compensation claim for the period following the last day he reported to work – June 10, 2006. (Doc. 40-4 at 35-41). However, there is no evidentiary support for his contention that this issue was implicitly raised in his EEO complaint or at the administrative hearing.

Accordingly, the Court recommends that Defendant's motion to dismiss Plaintiff's claims of employment discrimination on the basis of disability under Federal Rule of Civil Procedure Rule 12(b)(1) be granted. *See Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (federal courts are courts of limited jurisdiction and, without jurisdiction conferred by statute, lack the power to adjudicate claims).

***2. The Court lacks jurisdiction to decide claims relating to the termination of Plaintiff's employment.***

Plaintiff also failed to exhaust his administrative remedies regarding his claim that he was unlawfully removed from his employment with the Postal Service. This issue was not raised in either of the EEO complaints filed by Plaintiff. (Doc. 40-1 at 14; Doc 40-2 at 9). Plaintiff suggests that because he was terminated "within days of the Administrative Judge's decision and before [he] was able to appeal the decision," his removal was, *ipso facto*, retaliation or reprisal for his discrimination complaints. (Doc. 47 at 2). Plaintiff offers no legal or factual basis for his position. It is undisputed that Plaintiff did not file an EEO complaint alleging discrimination as the reason for his termination, despite the fact that in the letter informing him of his termination, he was advised of his right to do so. (Doc. 40-2 at 37-38). Plaintiff did not exhaust his administrative remedies and, as a result, this Court lacks jurisdiction to consider his claims relating to his removal.

Thus, the Court recommends that Defendant's motion be granted and that Plaintiff's complaint(s) relating to his termination of employment be dismissed under Federal Rule of Civil Procedure Rule 12(b)(1) for lack of subject matter jurisdiction. *See Home Builders Assoc. of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional authority to adjudicate the claim).

***3. The Court lacks jurisdiction to consider Plaintiff's claims of discrimination in pay and advancement opportunities.***

The Court lacks jurisdiction to consider Plaintiff's claims of discrimination regarding the denial of pay and advancement opportunities. A government employee alleging discrimination must bring a judicial complaint in the district court within 90 days of notice of final action taken

by a department following his EEO complaint. 42 U.S.C. § 2000e-16(c). The 90-day limitation period is jurisdictional and is, therefore, strictly construed. *Watkins v. Lujan*, 922 F.2d 261, 263 (5th Cir. 1991); *see also Ringgold v. Nat'l Maintenance Corp.*, 796 F.2d 769, 770 (5th Cir. 1986) (lawsuit dismissed when filed 92 days after receipt of notice).

Here, it is undisputed that the final decision on Plaintiff's second EEO complaint (case 0413) was issued on August 6, 2008, and Plaintiff's complaint was not filed until December 24, 2008. Thus, Plaintiff's claim was filed 50 days outside of the limitations period. Accordingly, the Court lacks jurisdiction to hear Plaintiff's claims to the extent they derive from Case 0413, specifically his claims of discrimination in pay and advancement opportunities based on race, color, and sex, which were not also alleged in Case 0286.

Therefore, it is recommended that Defendant's motion under Federal Rule of Civil Procedure 12(b)(1) to dismiss Plaintiff's claims of discrimination in pay and advancement opportunities for lack of subject-matter jurisdiction be granted.

### *4. Plaintiff has failed to establish a prima facie case of hostile work environment.*

Plaintiff's complaint includes the mere phrase, "Hostile Work Environment." (Doc 1 at 6). In light of Plaintiff's *pro se* status, the Court liberally construes the statement as an allegation that he was subjected to a hostile work environment in violation of Title VII. Read in tandem with the issues specified in Plaintiff's timely-filed EEO complaint (Case 0286), the alleged acts of harassment are construed to include "being held to a higher standard; being constantly threatened to do more; repeatedly being denied annual leave; never being offered a detail in a position of supervisor/204B; not being offered advancement opportunities; being specifically denied the opportunity to go on details as supervisor trainee; being treated in a manner which

discredited him before his peers and his management, and on June 14, 2006, being notified that disciplinary action would be issued against him for his absences on June 12 and 13, 2006." (Doc 40-2 at 15). Defendant moves for summary judgment on Plaintiff's hostile work environment claim. (Doc. 62 at 17-23). The Court concludes that summary judgment should be granted because Plaintiff cannot establish a *prima facie* case of hostile work environment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). Unsubstantiated beliefs are not competent summary judgment evidence. *de la O v. Housing Authority of City of El Paso*, 417 F.3d 495, 502 (5th Cir. 2005). Further, the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir.

2006) (quotation omitted).

Title VII prohibits harassment based on an employee's protected status that is so "severe and pervasive" as to "alter the conditions of [victim's] employment and create an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775,786 (1986) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57,67 (1986). A *prima facie* showing of a hostile work environment requires Plaintiff to demonstrate that (1) he is a member of a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his protected class; and (4) the harassment was sufficiently severe and pervasive such as to affect a term, condition, or privilege of his employment. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009). Here, even assuming Plaintiff's allegations of harassment are true, the record is totally devoid of evidence that such harassment was based on Plaintiff's race, color, or sex.

Plaintiff testified at his deposition that he has no evidence that the incidents he complains of occurred because of his race, color, or age, and relies only on his subjective belief that the events about which he complains were so motivated. (Doc. 40-5 at 22-23). In his response to Defendant's motion to dismiss and for summary judgment, Plaintiff states:

> Plaintiff has shown again and again that the actions taken by Yulonda Francis-Love were born of a Racial animus, as well that of Color, Age and Disability. One has but to look at the facts in this case, below. Russell has evidence of Y. Loves discriminatory animus/actions, through testimony, affidavit and typed request, lastly not least documents in evidence. Plaintiff has witness to the abuses, neglect, hostilities and higher standards. Through Federal and Postal rules and regulations Plaintiff win demonstrate unmistakable failures by management team to protect Plaintiff's rights.

(Doc. 47 at 7). Without citing his source, Plaintiff also lists the race, sex, and age of, and personnel actions relating to, a number of employees of the Mesquite Post Office. Based on the

statistical information Plaintiff cites, he concludes that the identified group includes ten African Americans, seven women, and six persons over 30 years of age; from that group he concludes that at least eight of the employees [apparently including Postmaster Love] were promoted through detail assignments. (Doc. 47 at 8). He also concludes that two Caucasian males over 40 years of age [apparently including himself] were "Demoted to Route," and that a third white male employee was "Detailed out of Station" after being promoted. *Id*. Plaintiff also makes conclusory and unsubstantiated statements that three of the employees he lists perjured themselves at his administrative hearing, and that another altered Plaintiff's "[a]ttendance records to reflect abuse." (Doc. 47 at 9-10). Plaintiff identifies two white male employees over 40 years of age who held the position of "Supervisor Customer Service." (Doc. 47 at 8).

Plaintiff has offered no proof that could raise a genuine issue of material fact as to whether the alleged harassment was based on his race, color, or age. Plaintiff's conclusory allegations of mistreatment do not advance his claim. *See Harilall v. University Health Sys. Dev. Corp.*, 174 F.3d 197 (5th Cir. 1999) (noting that the incidents of harassment recounted by plaintiff are all common workplace occurrences and not based on a protected characteristic). Title VII is not a general "civility code." and simply requires that employers not engage in conduct that can be characterized as "extreme." *Faragher*, 524 U.S. at 788; *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

Here, even accepting all of Plaintiff's allegations as true, there is no proof that the claimed harassment was predicated on Plaintiff's race, color, or sex. Accordingly, it is recommended that Defendant's motion for summary judgment be granted as to Plaintiff's claims of hostile work environment.

### B. Plaintiff's non-Title VII claims

Plaintiff's remaining non-Title VII claims are either subject to dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction, or summary judgment should be granted to Defendant because the claims cannot stand as a matter of law.

#### *1. Tort claims*

The complaint lists several state tort claims, including libel, slander, and destruction of personal property, all related to Plaintiff's employment and termination. (Doc. 1 at 6). However, the claims are precluded by the comprehensive federal statutory remedies provided by the Civil Service Reform Act (CSRA).

The CSRA is a detailed, comprehensive effort by Congress to regulate employee management relations in the federal government, and it provides the framework for administrative and judicial review of federal personnel decisions. The Supreme Court has repeatedly recognized that Congress can preclude judicial review of claims arising from federal employment decisions. *See e.g.*, *United States v. Fausto*, 484 U.S. 439 (1988). In *Fausto*, the Supreme Court concluded that the extensive statutory framework of the CSRA precludes judicial review of adverse personnel decisions except where explicitly provided for in the CSRA. *Id.*, 484 U.S. at 448-449. Moreover, the law is settled in this circuit that any "state-law claims are preempted by the CSRA." *Rollins v. Marsh*, 937 F.2d 134, 140 (5th Cir. 1991). Therefore, Plaintiff's tort claims should be dismissed under Rule 12(b)(1).

#### *2. Whistleblowing claim*

The complaint also suggests a claim for Whistleblowing. (Doc. 1 at 6). As Defendant correctly asserts, whistleblowing is covered under 5 U.S.C. § 2302(b)(8), but the Postal Service

is specifically exempted from that section by 5 U.S.C. § 2302(a)(2)(B)(i) (exempting excepted service); *Matthews v. U.S.P.S.*, 93 M.S.P.R. 109, 114 (2002). Plaintiff is precluded as a matter of law from asserting such claim; therefore, it should be dismissed under Rule 12(b)(1).

### 3. *Privacy Act violation claim*

Finally, the complaint alludes to a Privacy Act violation under 5 U.S.C. § 552. (Doc. 1 at 6). While again, the complaint alleges no factual basis for the charge, at his deposition, Plaintiff explained the basis for his claim. He testified that it stemmed from an incident during which an investigator of the Office of Inspector General informed Plaintiff that he had been provided Plaintiff's medical information by someone at Plaintiff's doctor's office, and that the investigator planned to give the information to the postmaster. (Doc. 40-5 at 43). However, Plaintiff also admitted that he had no knowledge that the investigator actually did so. (Doc. 40-5 at 43-44).

Based on Plaintiff's own testimony, Defendant correctly argues that Plaintiff cannot prove a violation of the Privacy Act. In order to prove a Privacy Act violation, Plaintiff must show: "(1) the information is covered by the Act as a record contained in a system of records; (2) the agency 'disclosed' the information; (3) the disclosure had an 'adverse effect' on the plaintiff ... ; and (4) the disclosure was 'willful or intentional.'" *Quinn v. Stone*, 978 F.2d 126, 131 (3d Cir. 1992). Even if Plaintiff's allegations are taken as true, by his own admission, the fact is that the only agency involved, the Postal Service, received rather than "disclosed" the information in question. Thus, Defendant should be granted summary judgment on this claim.

## IV. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that *Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment* be **GRANTED** (Doc 38) as outlined herein.

**SO RECOMMENDED** on March 4, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE